UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 17 Cr. 449-17 (KPF) |
| JOSE FLORES, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Jose Flores, who is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), has applied for compassionate release — in the form of immediate release to state custody to serve a previously-imposed ten-year sentence of imprisonment — pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #515, 518, 520). In brief, he contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of both a pre-existing medical issue and the conditions of his confinement at the MDC. The Government opposes this motion. (Dkt. #517). As set forth in the remainder of this Order, the Court denies Mr. Flores's motion for early release.

## BACKGROUND

In February 2018, Mr. Flores and 24 others were charged in a superseding indictment with conspiracy to distribute, and to possess with the intent to distribute, controlled substances, specifically, crack cocaine, marijuana, heroin, and oxycodone, in violation of 21 U.S.C. § 846. (Dkt. #23 (the "S1 Indictment")). The charges arose from a long-term investigation into a violent street gang, known as the "Hooly Gang," that controlled the narcotics

trade with threatened and actual acts of violence in the vicinity of Leggett Avenue and Fox Street in the South Bronx.  (*See generally* Revised Final Presentence Investigation Report ("PSR") ¶¶ 10-11).  Mr. Flores was close to, and sold drugs for, the leader of the Hooly Gang, co-defendant Carlos Calaff. (*Id.* at ¶ 14).  In addition to being observed by law enforcement officers selling narcotics with co-defendant Justin Lopez, Mr. Flores was also arrested in August 2017 while riding in a stolen vehicle with co-defendants Zonie Square, Jean Ortega, and Julio Matias.  (*Id.*).

On April 19, 2019, Mr. Flores pleaded guilty to a lesser-included offense of Count One of the S1 Indictment, pursuant to a plea agreement with the Government.  (Dkt. #447 (plea transcript)).  In relevant part, the parties stipulated that Mr. Flores qualified as a career offender under the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines"), and that his resulting Guidelines range was 151 to 188 months' imprisonment.  (PSR ¶ 4).  In advance of the sentencing proceeding, the Court was also made aware of a pending state sentence of ten years' imprisonment, which had been imposed as a result of Mr. Flores's involvement in an incident in which three individuals suffered serious, but not fatal, gunshot wounds.  (*Id.* at ¶¶ 90-92).

Mr. Flores's sentencing was held on November 1, 2019, at which time the Court varied downwardly substantially and sentenced him principally to a term of 36 months' imprisonment, to be run consecutively to the ten-year state sentence.  (Dkt. #504 (judgment), 508 (sentencing transcript)).  In imposing sentence, the Court observed:

I don't need to tell the parties what stands out about this case. If you look at Mr. Flores's role in the charged conspiracy, it is in fact quite small by comparison, although it is intensified somewhat by his direct connection to Mr. Calaff. So if you look at the nature and circumstances of the offense, it's not the worst thing I've seen. If you look at the history and characteristics of Mr. Flores, it's quite extraordinary.

Mr. Flores has among the most severe criminal histories I've ever seen, as prosecutor or as judge. And as I've mentioned earlier, so many of the things that one looks at when trying to predict whether someone will return to criminal conduct are boxes that are checked by Mr. Flores's conduct. There are many convictions. There are many with violence. There are convictions and criminal conduct he committed while he's on bail, while he's on release from another criminal justice term. Three of the offenses have involved guns. In two of them he shot people. And there seemed to be nothing to stop the conduct that he was involved in.

***

I agree with the government that the analogous, most analogous defendant in this case is Mr. Jorge. But I also agree, unlike the defense, that in certain metrics, Mr. Flores is worse, with a criminal history category, again, much more substantial and much more violent. I sentenced Mr. Jorge to 46 months of imprisonment. And that's something that I could very easily do here. But I am operating with the backdrop and the knowledge that there is this 120-month state sentence yet to be served. And for that reason — because otherwise I'd impose much more — I am imposing a term of 36 months' imprisonment, to be served consecutive to the state offense.

And so I think the federal offense comes first. But I am making clear, the two sentences are to be served separately. If it's this one that goes first, that is the 36 months of this one to be followed by the [120] months of the state. If it's the inverse, they are to be fully consecutive. And I've reduced this sentence so that I don't have to explain to the Bureau of Prisons what I

> want in terms of partial concurrence. *I want them fully consecutive.*

(Dkt. #508 at 31-33 (emphasis added)).[1]

Mr. Flores filed his counseled motion for compassionate release on April 10, 2020. (Dkt. #515). The Government opposed on procedural and substantive grounds on April 15, 2020. (Dkt. #517). The Court denied the motion without prejudice to its renewal once Mr. Flores had exhausted his administrative remedies or 30 days had passed. (Dkt. #519). Mr. Flores renewed his application on May 12, 2020. (Dkt. #520).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing

---

[1] For ease of reference, the Court uses the page numbers assigned by the Court's electronic case filing system.

Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Flores's motion is now properly before the Court, since more than 30 days have passed since his compassionate release application was filed with the BOP. (Dkt. #520). The issue at hand is whether Mr. Flores has identified "extraordinary and compelling reasons" warranting his release. The Court finds that he has not.

As noted, Mr. Flores argues that the conditions of his incarceration at the MDC place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if contracted), because of the nature of his confinement at the facility, his existing asthma condition, and the claimed inability of prison staff to handle the outbreak. (*See, e.g.*, Dkt. #515 at 5). These particular arguments are not unique to Mr. Flores, but rather are being raised by a host of inmates housed in federal facilities. What *is* unique, at least to the Court, is that Mr. Flores does not seek a transfer to a residence, but rather to an unnamed New York State correctional facility so that he may begin serving his 10-year state sentence. (*See id.* at 7-8). As he explains, he makes this application in part "so he can better practice social distancing, as recommended by the CDC," at a New York State facility. (*See id.* at 7).

The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*,

6

No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases). This Court aligns itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

 Mr. Flores has not demonstrated the existence of extraordinary and compelling circumstances in his case. Mr. Flores is 32 years old, which places him at a comparatively low risk of hospitalization or death from COVID-19. *See* Weekly Updates by Select Demographic and Geographic Characteristics,

CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed June 2, 2020).  And the Court rejects Mr. Flores's decision to lean into his childhood asthma conditions.  In his presentence interview, Mr. Flores related that he was "in good health, with no chronic conditions.  He noted that he had asthma as a child, but he ceased having symptoms at the approximate age of 13."  (PSR ¶ 118).  Even today, Mr. Flores concedes that he "has not suffered significant symptoms from his asthma lately," and that the inhaler he was prescribed as an adult remains with his mother.  (Dkt. #515 at 7).  The CDC has identified only moderate to severe asthma as a comorbidity that elevates the likelihood of serious illness from COVID-19, and Mr. Flores has demonstrated neither degree of severity.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (accessed June 3, 2020).

     Mr. Flores's current rumination that his childhood asthma condition might relapse now that he is in his 30s (*see* Dkt. #515 at 7; Dkt. #518 at 4), is far too slender a reed on which to predicate the extraordinary relief of release from his federal sentence one year early.  Unsurprisingly, Mr. Flores in no way suggests that he has been unable to manage any medical condition he may have, or that the BOP has in any way neglected his care.  *See, e.g.*, *Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable

and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus).[2]

On the issue of the MDC, this Court joins its colleagues in this District in being appropriately concerned about the conditions of confinement at federal facilities during the present pandemic. *See, e.g.*, *United States* v. *Park*, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020). For its part, this Court has scrutinized the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (accessed June 2, 2020), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the writing of this Order, the BOP has identified zero inmates and six staff

---

[2] *See also United States* v. *Garcia*, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020):

> First, the Court is skeptical that by merely alleging that he "has asthma, ... is in prison, and [that] there is a COVID-19 outbreak nationwide," Garcia presents the type of "extraordinary and compelling reasons" that demand relief. *See United States* v. *Rodriguez*, No. 16-cr-167 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (rejecting a similar compassionate release motion). Indeed, the Court has only limited information about the severity of Garcia's asthma and is also mindful that the MDC and other federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates (Gov't Ltr. at 4-5 (describing those steps)). *See, e.g., United States* v. *Lynch*, No. 20-cr-202 (LAP), 2020 WL 2145363, at *3 (S.D.N.Y. May 5, 2020) (denying bail where the defendant "proffer[ed] no medical complications that he ha[d] experienced ... as a result of his asthma" and where "the [g]overnment ... detailed the steps taken by [the] Bureau of Prisons in general and the MCC in particular to minimize the effect of COVID-19"); *United States* v. *Belle*, No. 18-cr-117 (VAB), 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (holding that the mere fact that a defendant has asthma is not enough to demonstrate that he is at severe risk from COVID-19 should he remain incarcerated).

members who are currently positive for COVID-19.  The Court concludes on balance that the danger that Mr. Flores faces from infection with COVID-19 does not amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").  And this conclusion is particularly appropriate when compared with Mr. Flores's plan of release, to an as-yet-unknown state correctional facility where, in theory, he might be better able to mitigate the risks of the coronavirus.[3]

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Flores's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  As the Court observed at sentencing, Mr. Flores has a criminal history that is both exceptionally violent and highly indicative of recidivism.  The Court varied downwardly only because of the length of the state sentence, but it meant for Mr. Flores to serve the

---

[3]  Mr. Flores's alternative argument, that his release might make MDC safer for other inmates, is equally speculative *and* could be made by any inmate at that facility.  (*See* Dkt. #518 at 6).

10

totality of the sentence it imposed.  It sees no reason to revisit its prior decision.[4]

## CONCLUSION

For the foregoing reasons, Defendant Jose Flores's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motions at docket entries 515 and 520.

SO ORDERED.

Dated:   June 3, 2020
         New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge

---

[4] To the extent he has not done so already, Mr. Flores can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant that relief, however, is reserved to the discretion of the BOP.